ALFRED BERGERON's (dependent's) CASE.

Suffolk.    November 15, 1922. — January 4, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Workmen's Compensation Act,* Procedure: notice to employer.

At the hearing before the Industrial Accident Board of a claim for compensation by the widow of an employee who had died as a result of lead poisoning, it appeared that the notice in writing required by G. L. c. 152, § 41, had not been given. There was evidence that the employee, a painter, showed some symptoms of lead poisoning two years before his death and that about eight months before his death he consulted his family physician, complaining of his throat, when the physician noticed the "lead line" on his gums, gave him treatment and told him he should be careful. Testimony of experts was to the effect that "the assimilation of lead into the system is usually a very slow thing," that it "is a slow, cumulative process and ultimately a sufficient amount is in the body to produce definite effects." The employee's steady employment was not affected by his condition until seven months after his examination by his physician, when he became incapacitated. *Held,* that a finding was warranted that

the date of the injury was not the time when he first was treated for lead poison-
ing, but was the time when the accumulated effects of the lead poisoning, due
to his employment by the subscriber, first incapacitated him for work.
When the employee in the circumstances above described failed to report for work
on the day he first was incapacitated, the general agent and superintendent of his
employer called upon him at his home and was told what the physician had
said, namely that his illness "was brought about by lead poisoning and he would
have to discontinue painting and take up some other line of business and rest
for three months." *Held,* that a finding was warranted that the subscriber had
knowledge of the injury "as soon as practicable after the happening thereof."

CERTIFICATION to the Superior Court, under the provisions of
the workmen's compensation act, of a decree of the Industrial
Accident. Board awarding compensation upon a claim by the
widow of Alfred Bergeron for compensation due to his death from
lead poisoning while in the employ of the "Hurley Estate," the
board finding on the question of notice that the date of injury
"was not the time in November, 1919, when he was first treated
for lead poisoning, but the time when the accumulated effects of
the lead poisoning, due to his employment by the subscribers,
first incapacitated him for work on June 9, 1920, and that the em-
ployers, having knowledge of the injury through their recognized
agent on June 10, 1920, had such statutory knowledge as to entitle
his widow to maintain her claim for compensation under the
statute." The employee died on July 2, 1920.

In the Superior Court, the case was heard by *Hammond, J.,*
by whose order a decree was entered directing that compensation
be paid to the widow at the rate of $10 per week for four hundred
weeks from July 2, 1920. The insurer appealed.

The case was submitted on briefs.

*E. I. Taylor,* for the insurer.

*T. A. O'Leary,* for the claimant.

DE COURCY, J. The Industrial Accident Board found that
Alfred Bergeron, an employee of the Hurley estate, received a
personal injury arising out of and in the course of his employ-
ment; and that death resulted therefrom on July 2, 1920. No
written notice of the injury, as required by § 15, Part II, of the
workmen's compensation act (now G. L. c. 152, § 41), was given
by the widow. After the case had been recommitted for further
hearing on the question of notice or knowledge of the injury, the
board found that the date of the injury was June 9, 1920; and that

the employers had knowledge of the injury, through their recognized agent, on June 10, 1920. The main question now argued by the insurer is whether this finding as to the date of the injury was warranted.

Section 18 of the act provided: "Want of notice shall not be a bar to proceedings under this act, if it be shown that the association, subscriber, or agent had knowledge of the injury." See now G. L. c. 152, § 44. *Barry's Case*, 240 Mass. 409. The employee worked as a painter for the Hurley estate for approximately eight years. He handled and used lead in mixing the paints. There was evidence that when he consulted his family physician in November, 1919, complaining of his throat, the doctor noticed the "lead line" on Bergeron's gums, gave him iodide of potassium treatment for lead poisoning, and told him he should be careful. There was further evidence from the dentist and the widow that Bergeron showed some symptoms of lead poisoning two years or more before he died. According to the testimony of the experts "the assimilation of lead into the system is usually a very slow thing;" and "It is a slow, cumulative process and ultimately a sufficient amount is in the body to produce definite effects." The employee worked steadily until he went on a vacation with his family in July, 1919; and after his return worked daily until June 9, 1920. The finding of the board was that "the date of injury in the Bergeron case, was not the time in November, 1919, when he was first treated for lead poisoning, but was the time when the accumulated effects of the lead poisoning, due to his employment by the subscribers, first incapacitated him for work on June 9, 1920." There was evidence to warrant the board in so finding. It appears that the employee was able to perform and did perform his regular work daily until and including June 9. Then the disease had progressed to such a serious stage that his physician told him his illness was brought about by lead poisoning and he could not paint any more. *Johnson's Case*, 217 Mass. 388. *O'Donnell's Case*, 237 Mass. 164.

On June 10, knowledge of the injury came to Dempsey, who was the general agent and superintendent of the Hurley estate, and who employed and directed the work of Bergeron. When the employee failed to report for work on that morning, Dempsey went to Bergeron's house; and was told by him what the doctor

had said, namely, that his illness "was brought about by lead poisoning and he would have to discontinue painting and take up some other line of business and rest for three months." Plainly it could be found that the subscribers had knowledge of the injury "as soon as practicable after the happening thereof." St. 1911, c. 751, Part II, § 15. *Bloom's Case,* 222 Mass. 434. *Brown's Case,* 228 Mass. 31. *Walkden's Case,* 237 Mass. 115.

The question whether the insurer was prejudiced by want of notice, does not arise under the second finding of the board member, which was affirmed by the Industrial Accident Board.

*Decree affirmed.*