## PATRICK SULLIVAN'S CASE.

Suffolk. December 13, 1928. — January 3, 1929.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Workmen's Compensation Act*, Injuries to which act applies.

Incapacity of an employee of a granite company who worked on a surface cutting machine, due to a condition of his lungs which a physician described as pneumonoconiosis and in substance stated to be the result of nature's reaction to fine particles of granite dust entering the lungs, properly may be found to have resulted from a personal injury, as distinguished from disease, arising out of and in the course of the employment, and to warrant compensation under the workmen's compensation act.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation to the claimant for alleged personal injuries received while in the employ of Chester Granite Company.

In the Superior Court, the case was heard by *Lummus*, J.,

by whose order a final decree was entered awarding compensation.   The insurer appealed.

*R. Gallagher,* (*N. F. Fermoyle & J. A. Dennison* with him,) for the insurer.

*J. H. Cordella,* for the claimant.

RUGG, C.J.   This is a proceeding under the workmen's compensation act.   The question for decision is whether the employee received a personal injury arising out of and in the course of his employment, or whether he was merely suffering from disease so induced.   His work was on granite or other stone with a surface cutting machine.   Its method and effect of operation were described by him as follows: "This machine comes down with a point and hammers . . . . The power . . . is furnished by compressed air. . . . That hammer comes up and down on the stone.   The purpose of this machine in cutting stone is to refine it up.   It takes the rough off and then refines it up, makes it smooth.   It first comes off in little lumps and then comes off fine.   . . . sometimes he could not see it was so dusty.   His clothes were full of dust at night.   He used to blow the dust off at night with a hose."   He also testified to progressive weakness, shortness of breath and coughing.   There was testimony from a physician that on examination of the employee there was found "a considerable amount of pneumonoconiosis, granite cutters' disease"; that there was "direct connection between the granite dust on his lungs, . . . and his condition . . . . . Pneumonoconiosis is the result of nature's reaction to fine particles of granite dust.   Nature at first takes care of this granite dust by means of the lymphatics and for a good many years . . . can take care of it adequately and well, so that the system is not seriously injured."   Then "the lymphatics break down; they lose their function as filters and the granite dust is carried into the lung itself.   Here nature forms what is its own protective reaction, scar tissue, around each tiny particle of granite and as this process goes on the man is literally choked to death; his breathing capacity becomes less and less."

This testimony was adequate to support the finding of the board that the employee was incapacitated by reason of a

personal injury, as distinguished from disease, arising out of and in the course of his employment. It is settled that simple disease resulting from employment affords no ground for recovery under our workmen's compensation act. *Maggelet's Case*, 228 Mass. 57, 61. *Pimental's Case*, 235 Mass. 598, 602. That conclusion was adumbrated in *Madden's Case*, 222 Mass. 487, 490, 491, 493. It was a necessary construction of the statutory words. An expression unguardedly broad in *Johnson's Case*, 217 Mass. 388, 390, was restricted in *Pimental's Case, supra*, at page 602. In certain circumstances, however, disease may also be a personal injury within the meaning of the act. It was said in *Burns's Case*, 218 Mass. 8, 12, "In common speech the word 'injury' as applied to a personal injury to a human being, includes whatever lesion or change in any part of the system produces harm or pain or a lessened facility of the natural use of any bodily activity or capability." In the case at bar there was evidence tending to show the tangible impact of particles of granite upon the lungs of the employee producing definite damage to his body. The "personal injury" for which alone compensation is payable under G. L. c. 152, § 26, might have been found to be due to physical deterioration flowing immediately from corporeal collision with a foreign substance set in motion by the business of the employer performed by the employee by virtue of his contract for service. It might have been found to be as tangible as a broken bone. Although this result may be termed "granite cutters' disease," that factor is not decisive that it was a disease rather than a personal injury under the workmen's compensation act. Its nature in that respect must be ascertained from an analysis of the physical condition which in truth resulted and not from mere nomenclature. The personal injury may be none the less the direct and consequential result of the employment, although a condition may arise termed in some connections a disease. The case at bar is governed by *Hurle's Case*, 217 Mass. 223. In that case blindness resulting from breathing poisonous gas was held to be a personal injury. To the same general effect are *McPhee's Case*, 222 Mass. 1, where pneumonia caused by inhalation of smoke and by

drenching with water was held to be within the act, and *Doherty's Case,* 222 Mass. 98, 100, and *O'Donnell's Case,* 237 Mass. 164, where lead poisoning was held to be within the act. Some of the decisions in other jurisdictions relied upon by the insurer were considered and the principle on which they rest was rejected in *Maggelet's Case,* 228 Mass. at page 63. They need not be discussed because the interpretation of our statute has been settled.

*Decree affirmed.*